

EOD
10/09/2007

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **ELVIN G. SADLER, JR.** | § | |
| and **DIANNA L. SADLER** | § | Case No. 06-90379 |
| | § | |
| Debtors | § | Chapter 13 |

## MEMORANDUM OF DECISION

This matter is before the Court to consider confirmation of the Debtors' First Amended Chapter 13 Plan proposed by Elvin and Dianna Sadler ("Debtors"), the joint debtors in the above-referenced Chapter 13 case. Ronald E. Stadtmueller, Chapter 13 Trustee, objected to the confirmation of the Plan on two grounds: that the Debtors are not applying all of their projected disposable income in the applicable commitment period of five years to make payments to unsecured creditors and that the plan has not been proposed in good faith.[1] At the conclusion of the hearing, the Court took the matter under advisement. This memorandum of decision disposes of all issues pending before the Court.[2]

## Background

The Debtors, Elvin and Dianna Sadler, filed a voluntary petition for relief under

---

[1] Other confirmation objections raised by the Trustee were resolved prior to the hearing.

[2] This Court has jurisdiction to consider confirmation of the plan pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(a). The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (L), and (O).

Chapter 13 of the Bankruptcy Code and seek to confirm their First Amended Chapter 13 Plan, which proposes to pay a total of $22,300.00[3] to unsecured creditors from a total plan base of $27,000.00[4] Because the Debtors admittedly have a current monthly income which, when extrapolated into an annual amount, exceeds the median family income for two-person households in this state,[5] 11 U.S.C. §1325(b)(3) mandates that their deductions of reasonable and necessary expenses from their current monthly income are subject to certain standards set forth in §707(b)(2). Unless the Debtors are allowed to exceed certain expense ceilings imposed by the Internal Revenue Service standards which are incorporated into §707(b)(2)(A), their disposable income calculation, as calculated through Part V of Form B22C,[6] would require a monthly payment to unsecured creditors of $907.37 for the 60-month period, for a total sum of $54,442.20, and the Trustee bases his disposable income objection upon that calculation.

However, the Debtors assert that their monthly disposable income is actually significantly lower due to additional monthly expenses that they assert are reasonable and necessary for their maintenance and support and which can therefore be legitimately

---

[3] This amount reflects a 30.29% dividend based upon the Debtors' estimate of $73,611 of general unsecured indebtedness.

[4] The Debtors' plan proposes to pay the sum of $450.00 per month for the applicable commitment period of five years.

[5] The Debtors' Current Monthly Income of $8,717.53, which extrapolates into an annual income of $104,610.36, exceeds the $47,321.00 which is currently recognized as the applicable median family income for two-member households in Texas.

[6] Ex. P-3. New Official Form B22C is utilized in Chapter 13 cases to implement the provisions of 11 U.S.C. §§1325(b)(3) and (b)(4).

deducted pursuant to 11 U.S.C. §1325(b)(3). The two specific categories in which the Debtors assert just cause to exceed the IRS recommendations are: vehicle operation expense (Form B22C, lines 27 and 59) and Chapter 13 administrative expenses (line 50).

The Debtors testified that they live a considerable distance from their respective places of employment, necessitating a 124-mile round trip commute thrice weekly for Mrs. Sadler, and a 60-mile daily round trip employment commute for Mr. Sadler. There are also occasional 60-mile round trips for shopping, medical needs and other personal business. The Debtors assert that these commutes require Mrs. Sadler to fill her gas tank ten times each month, at an average cost of $35.00, and Mr. Sadler to fill his gas tank six times each month, at an average cost of $60.00. Additionally, the Debtors claim that Mrs. Sadler's vehicle requires monthly oil changes and bi-monthly air filter replacements, while Mr. Sadler's vehicle requires bi-monthly oil changes. Hence, the Debtors assert that their actual monthly vehicle operation cost is $880.00 ($120.00 for automobile insurance, $373.00 for fuel and maintenance on Mr. Sadler's vehicle, and $372.00 for fuel and maintenance on Mrs. Sadler's vehicle). Mr. Sadler testified that there are no reasonable alternate employment opportunities for the Debtors nearer to their home and that their current commutes are reasonable and necessary to enable them to continue to earn a living necessary to their successful financial rehabilitation. Despite their asserted monthly operating costs, the Debtors provided documentary evidence of vehicle-related expenses over a 34-day period totaling only $469.02. Even when a reasonable amount is

assumed (despite lack of documentation) for insurance expense, vehicle inspections and registrations, and similar vehicle operation costs, the total falls far short of the Debtors' asserted costs.

With respect to Chapter 13 administrative costs, the Chapter 13 Trustee testified that, notwithstanding the 10% statutory cap on such fees,[7] the actual cost he is currently authorized by the Executive Office for United States Trustees ("EOUST") to assess on Chapter 13 plan payments is only 4%. However, because this amount is subject to change during the pendency of the plan, the Chapter 13 Trustee's office tests the financial feasability of every proposed plan based upon the payment of Trustee administrative fees calculated at the statutory maximum of 10%. Thus, despite the fact that the current EOUST schedules provide that the actual administrative cost is established at 8.7% of their projected plan payment, and despite the fact that the Chapter 13 Trustee is only currently charging 4%, the Debtors assert that a full 10% deduction on line 50 of Official Form B22C should be allowed because that is the amount by which the Trustee tests the feasability of the proposed plan.

The Trustee also objects to confirmation of this plan on the grounds that the plan has not been proposed in good faith in violation of 11 U.S.C. §1325(a)(3). The genesis of this complaint is that, within the thirty days immediately preceding their bankruptcy filing, at a time when Debtors were unable to make any payments on their unsecured debt,

---

[7] *See* 28 U.S.C. §586(e)(1)(B)(i).

and after admittedly consulting with a bankruptcy attorney in contemplation of filing a bankruptcy petition, the Debtors incurred new secured indebtedness through the purchase of a new 2006 Nissan Titan.[8] Mr. Sadler testified that the truck he had previously driven had constant mechanical problems (though such claims were not documented in any way), despite having also been purchased within the 910-day period preceding their bankruptcy filing, and that the value of his former truck had significantly depreciated to approximately $20,000.00, though the indebtedness totaled approximately $36,000.00. Mr. Sadler's bankruptcy counsel apparently advised him that purchasing a new truck before filing was advisable in the scheme of the Debtors' overall financial rehabilitation.

## Discussion

In the context of considering confirmation of a Chapter 13 plan proposed by a debtor who is not engaged in business, 11 U.S.C. §1325(b) now provides, in relevant part, that:

> (b)(1) [i]f the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan —
>> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

---

[8] The Debtors also purchased a new Nissan Altima automobile on credit in 2006, but that purchase occurred approximately ten months prior to filing and was motivated in part by health needs and fuel economy.

> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
>
> (2) For purposes of this subsection, "disposable income" means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended —
>> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor . . . ;[9]

Because the Debtors' current monthly income exceeds this state's median family income for a comparable household,[10] the following provisions of §1325(b)(3) are also invoked:

> (3) Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than—
>> (A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
>> (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
>> (C) in the case of a debtor in household exceeding 4 individuals, the highest median family income of the

---

[9] If a debtor is engaged in business, §1325(b)(2)(B) also deletes from "disposable income" any income which must be expended "for the payment of expenditures necessary for the continuation, preservation, and operation of such business."

[10] *See supra* note 5.

> applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4.

Thus, as a result of the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), the former system of determining the reasonableness and necessity of expenditures in a calculation of disposable income through an evaluation of Schedules I and J has been supplemented by the required overlay of the standards otherwise utilized in §707(b)(2) to determine whether a presumption of abuse exists in a Chapter 7 case.  Such "means test" standards are implemented through the use of Official Form B22C and are now used in the Chapter 13 context to gauge the necessity and reasonableness of expenses in specified categories by comparing them to financial standards devised by the Internal Revenue Service in those categories.  In applying these §707(b) standards only to Chapter 13 debtors whose current monthly income exceeds the median income of persons in their particular state, Congress implicitly recognized that, without the invocation of appropriate limitations, a higher level of monthly income enjoyed by a Chapter 13 debtor would likely be consumed in a lifestyle characterized by a higher level of monthly expenditures.  Thus, in an effort to ensure that a significant payment to unsecured creditors would actually be made by those persons whose monthly income reflected a financial ability to do so, Congress incorporated the §707(b) standards into §1325(b)(3) as a statutory ceiling for those enumerated expense categories, thereby precluding the allowance of any improper

discretionary spending by higher income debtors in Chapter 13.[11] This process, as implemented through the use of Official Form B22C, will produce a calculation of disposable income which in most instances will become the amount of "projected disposable income" required for plan confirmation under §1325(b)(1)(B), unless the projected amount is increased by the Court as the result of a more detailed examination of the reasonableness of the debtor's expenditures[12] or the projected amount is reduced because the debtor demonstrates a substantial change in circumstances that decreases the availability of future income.[13]

---

[11] Of course, the result that the Congress is attempting to produce by the statutory invocation of the IRS standards is exactly the goal that this and other courts sought to reach in pre-BAPCPA rulings on disposable income in Chapter 13 cases. *See, e.g., In re Johnson*, 241 B.R. 394, 399 (Bankr. E.D. Tex. 1999) quoting *In re Gonzales*, 157 B.R. 604 (Bankr. E.D. Mich. 1993) ["Thus the proper methodology is to aggregate all expenses projected by the debtor which are somewhat more discretionary in nature, and any excessive amounts in the relatively nondiscretionary line items such as food, utilities, housing, and health expenses, to quantify a sum which, for lack of a better term, will be called "discretionary spending."...If the discretionary expenses in the aggregate allow the Debtors to exceed their basic needs, including a reasonable reserve for recreation and exigencies (the reasonable "cushion"), then their plan cannot be confirmed."] *Id.* at 608-09 (citations omitted).

[12] This Court has already experienced anomalies in this process in cases in which the B22C calculation has produced a zero or a negative number but which involve debtors who admittedly have disposable income available for distribution to unsecured creditors. In the opinion of this Court, the phrase "in accordance with" as utilized in §1325(b)(3) means that the standards imposed by that subsection cannot be violated during the determination of whether proposed expenditures are reasonable and necessary. However, the fact that a debtor proposes a plan with a payment amount to unsecured creditors equivalent to the B22C calculation does not necessarily constitute compliance with the §1325(b)(1)(B) standard and does not preclude the Court from engaging in a further evaluation of the reasonableness of the debtor's expenses.

[13] As courts construing the statutory changes in this area have already concluded, "'projected disposable income' under section 1325(b)(1)(B) necessarily refers to income that the debtor reasonably expects to receive during the term of the plan," *In re Hardacre*, 338 B.R. 718, 723 (Bankr. N.D. Tex. 2006), and the *projected* disposable income may vary from the disposable income calculation if "the debtor can show that there has been a substantial change in circumstances such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future." *In re Jass*, 340 B.R. 411, 418 (Bankr. D. Utah 2006). *See also, In re Grady*, 343 B.R. 747

Yet consideration of the particular circumstances of a higher income Chapter 13 debtor has not been completely precluded. In determining amounts reasonably necessary to be expended under §1325(b)(2) "in accordance with subparagraphs (A) and (B) of section 707(b)(2)," a higher income Chapter 13 debtor may demonstrate:

> (i) . . . special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances ~~that~~ [sic] justify additional expenses or adjustments of current monthly income *for which there is no reasonable alternative.*
>
> (ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide–
>
>> (I) documentation for such expense or adjustment to income; and
>>
>> (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.
>
> (iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

11 U.S.C. §707(b)(2)(B) (emphasis added).[14] Thus, the incorporation of the means test standards into the disposable income calculation established by §1325(b) allows an affected higher-income Chapter 13 debtor to establish the existence of "special circumstances" which justify the recognition and allowance of additional categories of

---

(Bankr. N.D. Ga. 2006) [court must consider the change in circumstances caused by joint debtor's recent inability to work due to medical problems in determination of the debtors' projected disposable income].

[14] Since §707(b)(2)(B)(iv) relates solely to the rebuttal of the presumption of abuse in a Chapter 7 case, it is irrelevant to a consideration of disposable income in a Chapter 13 case.

expense or an adjustment to the calculation of current monthly income.[15] It is under this "exception" to the means test standards that the Debtors seek the allowance of an additional $537 per month in the transportation expense category.[16] In an attempt to fulfill their evidentiary obligation imposed under §707(b)(2)(B)(ii) and (iii), the Debtors presented the aforementioned testimony as well as limited documentary evidence.

The Debtors have failed in this instance to demonstrate the existence of special circumstances which warrant the approval of this additional expense. Without disputing the absence of any reasonable alternative to the option of incurring additional automobile expenses on a monthly basis, the Debtors have failed to provide the statutorily-mandated documentary evidence necessary to demonstrate special circumstances in the requested amounts. Even if the Debtors' monthly gasoline consumption had been verified (which it was not), they absolutely failed to provide any documentary evidence of their actual costs of insurance, licensing fees, repairs, and maintenance. Based on the documentary evidence that *was* presented to the Court, an additional expense of $84.63 arguably has been demonstrated,[17] but the Debtors' proposed plan still falls far short of meeting the

---

[15] In the context of a Chapter 7 case, the establishment of these special circumstances would rebut the presumption of abuse which would otherwise preclude the availability of relief under Chapter 7.

[16] The Debtors' B22C breaks this into two separate line items: Auto Insurance and Higher Transportation Expenses. However, because auto insurance is part of the IRS local standard figure entered on line 27, delineating it as a separate claim is improper. The entire amount should be characterized as additional transportation expenses. *See generally* Internal Revenue Manual, §5.15.1.9 (May 1, 2004), http://www.irs.gov/irm/part5/ch15s01.html.

[17] Receipts totaling $469.02 over a 34 day period represent an average daily cost of $13.79, or an average monthly cost of $427.64, which is $84.64 more than the vehicle operation cost allowed by the

statutory requirements.[18]

In addition to his objection to the Debtors' additional transportation expense, the Chapter 13 Trustee objects to the Debtors' attempt to deduct 10% of their proposed plan payment as a deductible expense in calculation of their disposable income on line 50 of Official Form B22C. Section 707(b)(2)(A)(ii)(III), as incorporated into the calculation of disposable income by §1325(b)(3), allows a debtor to include among his monthly expenses "the actual administrative expenses of administering a chapter 13 plan for the district in which the debtor resides, up to an amount of 10 percent of the projected plan payments, *as determined under schedules issued by the Executive Office for United States Trustees.*"[19] As this Court stated on the record at the hearing on this matter, the statute defines the amount that can be claimed, and that definition specifically incorporates a financial figure promulgated by the EOUST. While the amount so designated by the EOUST may not be an "actual" expense rooted in reality, the statute vests in the EOUST the exclusive power to determine what the "actual" deduction will be and it has declared that, for cases filed in this district during the time period in which this case was filed, the

---

IRS of $343.00.

[18] For a case examining the propriety of additional vehicle operation expenses in the Chapter 7 context, see *In re Batzkiel*, 349 B.R. 581, 585-87 (Bankr. N.D. Iowa, 2006) ["In order for Debtors to claim operating expenses under 'special circumstances,' they must justify actual expenses in that amount, drawn from the type of expenses defined as transportation operating expenses in the Internal Revenue Manual. Further, Debtors must itemize such expenses, provide documentation for the expenses, and explain the special circumstances that demonstrate that the expenses are 'reasonable and necessary.'"].

[19] 11 U.S.C. §707(b)(2)(A)(ii)(III) (emphasis added).

allowed deduction shall be 8.7% of the proposed plan payment.  Hence, the Debtors are not free to deduct 10% of their proposed plan payment on line 50 of the B22C, but are instead statutorily bound to utilize the percentage designated by the EOUST schedule.  If this number had been properly entered on the Debtors' B22C, it would have increased the minimum amount the Debtors must provide to their unsecured creditors by $5.85 per month, or $351.00 over the 60-month life of the plan.  This deficiency merely supplements the conclusion that the Debtors have failed to propose a plan that meets the disposable income requirement and that, therefore, the Debtors' proposed plan fails to meet the standards required for confirmation.[20]

Accordingly, the Court concludes that the objection of the Chapter 13 Trustee as to disposable income must be sustained and that confirmation of the Debtors' First Amended Chapter 13 plan should be denied.  In light of this initial denial of confirmation, the Debtors shall file a new Chapter 13 plan within thirty (30) days of the date of this Order and, in the event that the Debtors fail to do so, absent a further order of the Court

---

[20] Thus, the Court need not reach the Trustee's objection that the Debtors' plan was not proposed in good faith in violation of §1325(a)(3) because the Debtors incurred more than $30,000 in new debt on the eve of bankruptcy.  The Court shall not reach, therefore, whether such an objection was erroneously brought under §1325(a)(3) and should, in fact, have been brought under new §1325(a)(7) since the basis of the objection actually pertains to pre-petition actions of the Debtors rather than the post-petition action of proposing a plan.  Having been extracted from the various good faith considerations under §1325(a)(3) and given prominence as a singularly sufficient ground upon which confirmation may be denied, its continued relevance to a §1325(a)(3) examination may be suspect.  This new distinction could be significant for a debtor as well since a §1325(a)(7) violation would appear to be incurable by plan amendment.  Finally, a failure to timely raise the new (a)(7) objection in a confirmation context would appear to have *res judicata* implications.  *See, e.g., In re Rosetti*, 2007 WL 2669265 (Bankr. N.D. Tex. Sept. 6, 2007).  However, because confirmation in this instance must be denied on other grounds, consideration of those issues shall await another day.

extending such deadline for cause shown, or in the event that the Debtors thereafter fail to confirm such new Chapter 13 plan upon consideration by this Court under its normal procedures, this Chapter 13 case shall be dismissed, pursuant to §349(a) of the Bankruptcy Code, without further notice or hearing and with prejudice to the rights of the Debtors to file a subsequent petition under any chapter of Title 11, United States Code, for a period of one hundred twenty (120) days from the entry of the order of dismissal.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[21] pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014. A separate order will be entered which is consistent with this opinion.

Signed on 10/09/2007

*/s/ Bill Parker*

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[21] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.